UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| v. | : | 1:14-MJ-0189PAS |
| | : | |
| KEMONT BOWIE | : | |

**MEMORANDUM AND ORDER**

Defendant Kemont Bowie is charged by a criminal complaint with sex trafficking of a child in violation of 18 U.S.C. §§ 1591(a), (b)(2), as well as with transportation of a minor in violation of 18 U.S.C. § 2423(a). The gravamen of the charge is that Bowie acted as the pimp in a sex trafficking scheme by which a juvenile female was transported from Boston, Massachusetts, to Pawtucket, Rhode Island, for the purpose of engaging in prostitution. On September 8, 2014, he appeared before this Court for a preliminary hearing pursuant to Fed. R. Crim. P. 5.1. At the hearing, the government called Special Agent Russell Griffiths of the Federal Bureau of Investigation ("FBI") and offered in evidence an affidavit executed by FBI Special Agent Joseph Consoli. At the conclusion of the hearing, this Court took the issue of probable cause under advisement. For the reasons stated below, I now find that the government has sustained its burden of establishing probable cause.

**DISCUSSION**

**Preliminary Hearing Standard**

The government's burden to establish probable cause at this preliminary stage is low. A preliminary hearing under Fed. R. Crim. P. 5.1 is narrow in scope. Its purpose is solely to test whether probable cause exists as to the offense charged. It is not a discovery mechanism for defendants, and is not a trial to determine guilt or innocence. Although mere suspicion does not

suffice, probable cause may be found where there is a "fair probability," based on the totality of the circumstances, that a defendant committed the offense charged. United States v. Mims, 812 F.2d 1068, 1072 (8th Cir. 1987) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)); see United States v. Gomez, 716 F.3d 1, 7 (1st Cir. 2013). Both circumstantial evidence and the reasonable inferences drawn from it can support a finding of probable cause. United States v. Swope, 542 F.3d 609, 616 (8th Cir. 2008); United States v. Hilario, CR No. 1:09-M-167A, 2009 WL 2913957, at *1 (D.R.I. Sept. 9, 2009). With the exception of the rules on privilege, the Federal Rules of Evidence are not applicable at preliminary hearings. Fed. R. Evid. 1101(d)(3). As a result, the probable cause finding may be based, in whole or in part, on hearsay evidence; in addition, evidence at the preliminary hearing is not subject to objection on grounds that it was unlawfully acquired. Fed. R. Crim. P. 5.1(e).

The Supreme Court has counselled that probable cause is a "fluid concept," turning on the evaluation of evidence in a "nontechnical, common-sense" manner. Gates, 462 U.S. at 232, 235-36. "It does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt." Gerstein v. Pugh, 420 U.S. 103, 121 (1975). Based on this guidance, the magistrate judge's role at the preliminary hearing is simply to determine whether the government has presented sufficient evidence to establish probable cause. United States v. Kin-Hong, 110 F.3d 103, 120 (1st Cir. 1997); Ross v. Sirica, 380 F.2d 557, 560 (D.C. Cir. 1967). It is generally inappropriate for the magistrate judge to make credibility determinations, which fall within the province of the jury as the trier of fact. United States v. Perez, No. 5:14-MJ-75, 2014 WL 1725759, at *11 (S.D. Tex. Apr. 29, 2014) (at

probable cause stage of proceedings, defense's credibility-focused efforts are essentially irrelevant).

## Elements of the Crimes Charged

This probable cause analysis must focus on the elements of the two crimes with which Defendant is charged. The first charge is based on 18 U.S.C. §§ 1591(a), (b)(2), which criminalizes the knowing transportation of a minor (a person under the age of eighteen) in interstate commerce to be caused to engage in a commercial sex act. Captioned "Sex trafficking of children **or** by force, fraud, or coercion," 18 U.S.C. § 1591 (emphasis supplied), § 1591 expressly provides that "force, fraud or coercion" is not a necessary element of the crime as long as the offense involves the recruitment, enticement, harboring, transportation, or maintenance of a victim known to be under the age of eighteen. Section 1591 is also violated by a person who benefits financially from participation in a venture that has engaged in an act in violation. 18 U.S.C. § 1591(a)(2). The other charge is based on 18 U.S.C. § 2423(a), colloquially known as the Mann Act, which criminalizes the knowing transportation of a minor in interstate commerce with the intent that the minor engage in prostitution. As with § 1591, the use of coercion is not an element.

## Probable Cause Evidence

A bare outline of the crime charged against Defendant may be simply stated. The criminal complaint alleges that he was acting as a pimp in Pawtucket, Rhode Island, working, *inter alia*, with Raechyl Spooner, one of his most financially productive prostitutes. To recruit new prostitutes, he relied on Ricky Wallace, who was in Boston, Massachusetts, to find a "catch" to become a prostitute for their sex trafficking ring. On August 18, 2014, the seventeen-year-old female victim ("Victim"), who had prior experience with prostitution, ran away from a group

home in Arlington, Massachusetts, and walked to South Station in Boston, Massachusetts. There, she encountered Wallace, who spent some time with her at South Station and then called Defendant to pick her up. Defendant arrived in a car with Spooner; together they transported the Victim to a residence in Pawtucket, Rhode Island. She spent five days there, during which Defendant and Spooner trained her in prostitution, she went "walking" with Spooner, she observed Defendant strike Spooner because she had declined a potential client and she herself engaged in sexual intercourse with seven clients, including at least one sexual act for which Defendant (not she) was paid $120. On the fifth day, she placed two calls to someone at the group home she had left in Arlington, Massachusetts. The Victim was rescued by law enforcement shortly after the second call.

In addition to the objective fact that the Victim was located by law enforcement at the residence to which Defendant and Spooner had taken her, the principal evidence on which the government relies to establish probable cause are the statements of the Victim, Wallace and Spooner, supplemented, but also partially contradicted, by video camera recordings from South Station. During the preliminary hearing, Defendant vigorously challenged the credibility of the Victim, Wallace and Spooner. In challenging the Victim, he pointed out potentially significant inconsistencies between her description of what happened at South Station before she encountered Defendant and the video evidence. He also focused on her prior prostitution experience as an alternative explanation for her knowledge of the sex trade business. He challenged both Wallace and Spooner on grounds that both are also under suspicion for this criminal activity and therefore motivated to shift the blame to Defendant. Finally, he pointed out the complete absence of any credible evidence that the Victim was coerced by Defendant to travel from Massachusetts to Rhode Island and to remain in the Pawtucket residence over the

five days she was there; he argued that the only suggestion of coercion – the Victim's statement that she was forced into the car – should be disregarded in making the probable cause determination because it comes from the portion of the Victim's statement that is seemingly contradicted by the videos.

The FBI Special Agent's testimony established that the Victim's statement was the product of a single interview, conducted on the day she was rescued. Agent Griffiths explained that the investigating team recognizes that there are many gaps in her story and plan to interview her again.

In this preliminary statement, she claimed that, after she arrived at South Station, Wallace stole her money and lured her out of South Station, where she was forced into a car with Defendant and Spooner. This story is contradicted by the South Station videos that depict her strolling companionably with Wallace, accompanying him willingly, and without force or coercion, out of South Station, entering and then exiting a car different from the one later used to transport her to Rhode Island and finally walking with Wallace out of camera range. By contrast, Wallace's statement is consistent with the South Station videos. Wallace told authorities they went to a Subway Shop to get something to eat and denied that she was forced into the car with Spooner and Defendant.

On the other hand, Wallace corroborated much of the rest of the Victim's statement. For example, she claimed that she was initially told, while in Pawtucket with Defendant and Spooner, that she would have to wait to do calls because of her age. In his statement, Wallace told law enforcement that the plan was to wait to use her until she reached the age of eighteen. He also confirmed that he was the recruiter in Boston to select women for use in the sex trade, that Defendant was to be the Victim's pimp and that the Victim was to be transported to Rhode

5

Island to engage in commercial sex. The Victim has not yet been asked about the inconsistency between what is depicted on the video cameras and her statement.

The essential components of the Victim's statement are also corroborated by the recorded statement given by Spooner, who detailed her interaction with the Victim and Defendant. Spooner's statement establishes that the Victim engaged in at least one act of commercial sex for which the entire amount ($120) was paid to the Defendant. While Defendant focuses on Spooner's initial reluctance to identify Defendant as her pimp, ultimately, she told law enforcement, "I guess you could say he is my pimp."

Defendant also challenged the Victim's credibility because she is a troubled young person, who had been victimized by the sex trade in the past. As a result of her experience in prostitution, Defendant argues that this Court cannot infer from her knowledge of the commercial sex trade (such as the fees charged for sexual intercourse) that she was taught the business of prostitution by Defendant and Spooner. Defendant contends it is equally likely that this information is derived from her other unrelated experience. Defendant also points out that, apart from the Victim's own statement, nowhere in the evidence is there any allegation that he assaulted, beat, hit, forced or otherwise engaged in coercive behavior directed towards her. Even her statement establishes that she was not locked in the Pawtucket residence, but was frequently left alone, free to leave, with easy access to a main thoroughfare with bus stops and retail establishments. Further, the evidence permits the inference that she may have had a cell phone during the entire time that she was there.

Based on this quantum of proof, and particularly in light of the directive from the Supreme Court that the probable cause determination at the preliminary hearing is not to be based on the weighing of credibility, the Court finds that the government has more than satisfied

its burden of demonstrating through the statements of the Victim, Spooner and Wallace, that there is adequate evidence as to each of the elements of both of the charged crimes. In making this finding, I disregard the portion of the Victim's statement that is directly contradicted by the South Station video in which she claims she was robbed, lured from South Station and forced into the vehicle with Defendant and Spooner. Because coercion and force are not elements of the crimes charged, what remains is more than adequate for probable cause. The core elements are corroborated by all three statements, including the detail in the statements of the Victim and Wallace that there was a plan not to "use" her until she reached the age of eighteen. While Spooner and Wallace may be impeachable because they were motivated to deflect the responsibility onto Defendant, nothing in their statements has been shown to be objectively inaccurate. Indeed, Wallace's statement was corroborated by the South Station videos (of which he was unaware when he was interviewed).

At bottom, these credibility issues are to be determined by the fact finder. Perez, 2014 WL 1725759, at *8 (uncorroborated and inconsistent account of kidnapping victim, presented as second-hand hearsay, sufficient to establish probable cause). Defendant can attack the credibility of all three at trial and doubtless will. However, for purposes of establishing probable cause, this evidence is more than sufficient.

## CONCLUSION

Based on the foregoing, this Court concludes that the evidence presented by the government meets the burden of establishing probable cause that Defendant Kemont Bowie committed the offenses of sex trafficking of a child in violation of 18 U.S.C. §§ 1591(a), (b)(2), as well as transportation of a minor in violation of 18 U.S.C. § 2423(a).

ENTER:

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 12, 2014